O'LEARY BROTHERS v. THE GERMAN-AMERICAN INSURANCE COMPANY OF NEW YORK, Appellant.

**Insurance:** WAIVER BY AGENT. An agent of an insurance company may be authorized by the company to waive orally the requirements of the policy as to proofs of loss, although the policy itself provides that no officer, agent, or representative of the company shall be held to have waived any of the conditions of the policy unless the waiver is in writing, indorsed thereon; as the requirement as to writing may itself be waived by the company.

**WARRANT:** *Fraud.* A condition of a policy of insurance limiting the total insurance to three-fourths of the cash value of the property, is not a representation of warranty, and the policy is not avoided by innocently exceeding the limit.

**CONSTRUCTION OF PLEADING.** In an action on an insurance policy, an answer which in one count alleges other insurance as a ground for avoiding the policy, and in another count asks to prorate other insurance, if any may be found, does not allege the existence of other insurance, as a basis for prorating the loss.

**Declarations of Agent:** AGENT AS WITNESS. The rule, that the authority of an agent cannot be sustained by his own declarations, does not render it improper to prove his authority by his testimony.

**Striking Testimony:** POWERS OF AGENT: *Written contract.* An alleged special adjusting agent gave testimony tending to show that he had authority to orally waive proof of loss. No objection that he was acting under a written contract of employment was interposed, and the witness was dismissed. Plaintiff then gave evidence tending to show that said agent did orally waive proof. The agent then being recalled for further cross-examination, it appeared that he was employed in writing, and that the contract was in Illinois. It also appeared, inferentially, that the contract did not specify his duties, for the reason that he was to go to such places and do such work as should be directed by the manager. *Held,*

    a. As the testimony of the plaintiff was rightfully admitted, as the record stood at the close of the first examination of the

agent, said testimony, subsequently elicited, did not author-
ize the striking of plaintiff's said evidence.

b.  It does not appear that the writing deprived the agent of
pow?er to waive proof of loss, orally.

**Plea and Proof:** WAIVER: *Proof of loss.* The fact that plaintiff,
after the expiration of the time allowed, attempted to make proof
of loss, does not affect his right to recover on a plea that such
proof was waived.

**Instructions.** The court may, in its charge, refer to other paragraphs
thereof, without repeating them.

**Special Interrogatories.** Code, section 2808, providing that the jury
must be required, on the request of a party, to find specially on
questions of fact stated to them, in writing, does not require the
court to submit interrogatories as to immaterial facts, or facts
necessarily determined by the general verdict.

*Appeal from Iowa District Court.*—HON. S. H. FAIRALL,
Judge.

SATURDAY, DECEMBER 12, 1896.

THIS action at law was begun April 16, 1892, to
recover upon two policies of insurance against loss by
fire, issued by the defendant. One is to the plaintiff
for seven hundred and fifty dollars, on a stock of
agricultural implements and goods contained in a cer-
tain store building in Williamsburg, Iowa, and the
other to D. J. O'Leary for two hundred and sixty dol-
lars on said building, which last-named policy has
been assigned to the plaintiffs. The issues will suffi-
ciently appear in the opinion. Verdict and judgment
were rendered in favor of the plaintiffs. Defendant
appeals.—*Affirmed.*

*McVey & Cheshire* for appellant.

*Thomas Stapelton* and *Ranck & Wade* for appellees.

GIVEN, J.—I. Plaintiffs alleged that Roger Swire
was an adjusting agent of the defendant, with full

power to waive proofs of loss, and that he waived proofs of these losses. This was denied, and appellant's first contention is that there is no legal evidence that Mr. Swire has authority as alleged. Mr. Swire was called by the plaintiffs and testified to the effect that he was and had been special agent of the defendant for Iowa for four years; that the defendant had no state agent or adjuster for Iowa; that his duties were to go to such places in Iowa and do such work as he was instructed to do; that he received his instructions from the office of Eugene Carey, western manager at Chicago; that sometimes adjustments of losses were placed in the hands of special adjusters, and when not so placed were generally placed in his hands; and that he had the adjustment of this loss under instruction of the western manager. Defendant moved to strike out this evidence, "on the ground that no agent's authority or agency can be proven by the agent himself." *Moffitt v. Cressler*, 8 Iowa, 122; *Clanton v. Railroad Co.*, 67 Iowa, 350 (25 N. W. Rep. 277); *Bigler v. Toy*, 68 Iowa, 687 (28 N. W. Rep. 17); *Graul v. Strutzel*, 53 Iowa, 712 (6 N. W. Rep. 119); *Renwick v. Bancroft*, 56 Iowa, 527 (9 N. W. Rep. 367); and other cases,—are cited. In *Moffitt's Case* it is said: "To bind the principal by the representations of a third person the agency of such third person must be shown otherwise than by his declaration. He may prove his agency by his own oath, if the authority is conferred by parol, or it may be established in many ways, as by the declarations or admissions of the principal; but it cannot be by the declarations alone of the person assuming thus to act." The other cases recognize the rule that neither the agency nor the extent of his power can be established by the declarations of the supposed agent; but in neither is it held that agency and powers may not be proven by the agent himself,

In *Van Sickle v. Keith*, 88 Iowa, 14 (55 N. W. Rep. 43), the defendant was permitted to testify that he was the agent for his wife and her mother. It was urged that this evidence was incompetent to prove the fact of agency. The court says: "This is a misapprehension of the rule. It is the rule that the declarations of the agent are not competent to establish the fact of his agency, and the authorities cited are to that effect. But the declaration of the agent, and his testimony to prove the fact, are quite different. We know of no rule against the agency being established by the testimony of the agent." At the time this motion was ruled upon there was no claim nor evidence that Mr. Swire's employment was evidenced in writing; therefore there was no error in overruling the motion, and, being overruled, there was legal evidence tending to show that Swire had authority as alleged. Plaintiff Daniel O'Leary, being next examined, testified to certain acts and conversations between himself and Swire with respect to said loss and the waiving of proofs thereof, and then Mr. Swire was called for further cross-examination. He stated that his contract of employment was in writing, that it was in the company's office in Chicago, and that he did not have a copy. Thereupon defendant moved to strike all the evidence of Daniel O'Leary as to conversations and doings of Swire on the subject of what he did and his authority, and that tends to prove a waiver of proofs of loss, "because the authority of Swire is in writing," which motion was overruled. If the alleged authority of Swire was established, the testimony of Daniel O'Leary was competent. We have seen that Mr. Swire was a competent witness by whom to prove his agency and powers, if in parol, and that his testimony showed his agency and powers. This evidence was not objected to on the ground that his employment and powers were evidenced in writing,

and was properly received. While it was made
to appear later that Mr. Swire's employment was in
a writing then beyond the state, it does not appear
that his powers as a special agent were expressed
therein. We think the contrary may be inferred
from the fact that Mr. Swire's employment was not
for all, nor for any particular branch of the business,
but to transact such particular business within the
state as he might, from time to time, be instructed,
from the Chicago office, to perform. The instructions
given from time to time, rather than the contract of
employment, would express the powers which he was
to exercise. Following the ruling on this motion, Mr.
Swire was again recalled for further cross-examina-
tion. He testified that the telegram upon which he
acted in this matter came from the company's office
in Chicago, and was signed by Roger Porter, "a gen-
tleman in the company's office in Chicago." He pro-
duced the telegram, and the defendant introduced it
in evidence. The telegram to Mr. Swire is as fol-
lows: "Williamsburg telegraphs heavy loss. Send
adjuster. No particulars given. Answer. Roger
Porter." Under this record, the court was warranted
in refusing to strike the evidence of Daniel O'Leary.

II. These policies contain the usual provision
requiring the insured, in case of loss, to give notice
and proofs of the loss to the insurer. They also
contain the following: "And it is further expressly
covenanted by the parties hereto, that no officer, agent,
or representative of this company shall be held to have
waived any of the terms and conditions of this policy,
unless such waiver shall be indorsed hereon in
writing." . There is no claim that a waiver of
proofs of loss was indorsed on the policies in
writing, nor that a waiver was made by any other per-
son than Roger Swire. The court submitted to the
jury the issues whether or not Mr. Swire had authority

to, and did, waive proofs of loss, and instructed to the effect that if they found that he had such authority, and that he intentionally led the plaintiffs to believe that they need not make proofs of loss, and that plaintiffs had a right to, and did, rely thereon, they should find that there was a waiver. Appellant does not question that proofs of loss might be waived, but contends that " the language of the policy expressly limited the power of Swire, and he had no authority to waive proofs of loss," and that the waiver could only be in writing on the policies. These policies do not, as in *Kirkman v. Insurance Co.*, 90 Iowa, 457 (57 N. W. Rep. 953), limit the power of making such waivers to a particular officer. The only limitation is that there shall be no waiver "unless such waiver shall be indorsed hereon [on the policy] in writing." Unquestionably, any officer, agent, or representative of the company having authority so to do, could have waived the requirement as to proofs of loss by indorsement in writing on the policy. Appellant's contention is that it could not be done in any other way, and that, therefore, the court erred in submitting said issues to the jury, and instructing that a waiver could be made otherwise than in writing on the policy. In the well considered case of *Viele v. Insurance Co.*, 26 Iowa, 12, it is said: " The question is this: Can the breach of the condition of the policy against the increase of the risk, without the written consent of the insurers, whereby the instrument became forfeited, be waived by parol, or by the acts of defendant?" After deciding that the forfeiture could be waived, and, if waived, the policy would continue in force, the court proceeds to inquire whether the waiver must be in writing, and uses the following language: "It is argued, that the condition in the policy to the effect that an increase in the risk avoids the contract on the part of the underwriters, unless consent thereto be had in writing, implies that

such consent can be given in no other way. It will be at once remarked, that this restriction is itself a condition, and is just as capable of being waived or dispensed with as any other condition of the instrument and in the same way. There is nothing in the terms of this condition prohibiting its waiver." It is certainly clear, under this authority, that if Mr. Swire had power so to do, he could not only waive the proofs of loss, but also the requirement that it be in writing on the policy. While in some of the many cases on contracts of insurance that have arisen since *Viele's Case*, some statements have been made, in seeming conflict with that case, it will not be found, in any case where the question had been directly involved, that a different rule has been followed. A provision that the waiver of a forfeiture must be in writing is merely as to the manner in which the waiver may be evidenced, and surely this may be waived as well as the forfeiture itself. Appellant cites and relies upon the case of *Ruthven v. Insurance Co.*, 92 Iowa, 316 (60 N. W. Rep. 663), as decisive of this question. That policy provided as follows: "This policy is made and accepted, subject to the foregoing stipulations and conditions, together with such other provisions, agreements, or conditions, as may be indorsed hereon, or added hereto; and no officer, agent, or other representative of this company, shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions, no officer, agent, or representative, shall have such power, or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon, or attached hereto." We held that these provisions were a limitation upon the power of the company's local, special, and adjusting agents, but

did not hold that the company could not itself, or by an agent authorized to do so, waive the provisions of the policy as to proofs of loss, and that waivers should be in writing on the policy. The limitation in this policy, quoted above, is not as to the power of officers or agents to waive conditions of the policy, but simply that waivers shall be indorsed in writing thereon. The conclusion reached in that case was not because of the requirement that waivers must be in writing, but because the acts of the persons upon which the plaintiff relied were not authorized. "The party for whose benefit the conditions are introduced may waive the forfeiture." *Viele v. Insurance Co., supra.* If it may be said that the requirement that waivers be in writing on the policy, is for the benefit of both parties, then surely it could be waived, or, rather, superseded by a subsequent agreement by both. If Swire had authority so to do, he and the insured could agree that the waiver might be in parol. In the case of *Kirkman v. Insurance Co., supra,* it was held that the matters relied upon did not constitute a waiver, and that the agent, Stahl, had no authority to waive proofs of loss. The conclusion is not based upon the provision that the secretary alone could waive proofs of loss, and that in writing. In the recent case of *Taylor v. Insurance Co.,* 98 Iowa, 521 (67 N. W. Rep. 577), the contention was whether the agent, Bowen, had authority to waive certain conditions in the policy, and it was held that he had not. That policy provided that no condition therein "could be waived, except in writing, signed by the secretary." The court says: "We need not determine whether there could in any case be a waiver in any other manner than provided by the policy." We think there was no error in submitting to the jury the question whether Swire had authority to and did waive proofs of loss, nor in instructing that such waiver might be

in parol. We are also of the opinion that the jury was warranted in finding that Swire was authorized to and did waive proofs of loss. The fact that, after the lapse of the time allowed, the plaintiffs attempted to make proof of the loss, was immaterial, as recovery was sought upon the ground that proofs had been waived.

III. The policies in suit each contain a provision "that, in the event of loss, this company shall not be liable for an amount greater than three-fourths of the actual cash value of the property covered by this policy at the time of such loss, and in case of other insurance, whether policies are concurrent or not, then for only its *pro rata* proportion of such three-fourths value. Total insurance is hereby limited to three-fourths of the cash value of the property hereby covered, and to be concurrent herewith." The petition is in two counts, one on each policy. The defendant answered each, alleging that the property was insured in other companies named, and in sums stated; that the value of the property did not exceed a sum named; and charging "that said property was insured for its full value and more, and that in consequence thereof there was over-insurance, prohibited by the terms and conditions of said policy, and this policy was void on account of over-insurance." Plaintiffs demurred to these parts of the answer, on the following grounds: "The condition referred to in the policy does not constitute a representation of warranty, and there is no allegation of fraud, misrepresentation, or concealment, or that the property was insured for more than the limitation stated in the policy, with knowledge upon the part of the plaintiff; and it is not claimed that plaintiff had exceeded the limitation of said policy knowingly, and no facts are shown which would indicate a fraudulent over-valuation or fraudulent over-insurance." This demurrer

was sustained, to which defendant excepted, and elected to stand upon the answer. Appellant's counsel discuss the evidence to show that the value of the property was not equal to the aggregate amount of the insurance, and contend that, therefore, the court erred in sustaining the demurrer. That ruling cannot be tested by the evidence, and, as counsel have not otherwise discussed it, we will not consider it further than to say that the ruling seems to be in harmony with the case of *Stone v. Insurance Co.*, 68 Iowa, 738 (28 N. W. Rep. 47), and that the grounds stated in the demurrer were well taken.

IV. Appellant presented in due time five special interrogatories to be submitted to the jury, which the court refused to submit, namely: *First.* What would be the cost, at the time of the fire of replacing the stock of goods covered by policy No. 3,504? *Second.* Did plaintiffs rely upon the acts of Roger Swire after the fire, and had they, as reasonable men, the right to rely? *Third.* Did the acts of Roger Swire prevent the plaintiffs from making proofs of loss within sixty days after the fire? *Fourth.* Was any proof of loss made by plaintiffs, and, if so, when? *Fifth.* Were proofs of loss waived by defendant company, and, if so, when? The jury must be required, "on the request of any party to the action, to find specially upon any particular question of fact, to be stated to them in writing." Code, section 2808. It is not error to refuse to submit interrogatories as to immaterial facts, nor that are not ultimate in their nature, that may not be answered by "Yes" or "No," or in some other brief and pertinent way. They must be as to a single fact, and not conclusions based upon many facts. *Bonham v. Insurance Co.*, 25 Iowa, 328; *Phœnix v. Lamb*, 29 Iowa, 352; *Marshall v. Blackshire*, 44 Iowa, 475; *Home Ins. Co. v. Northwestern Packet Co.*, 32 Iowa, 233. In *Whalen v. Railroad Co.*, 75 Iowa, at

page 568 (39 N. W. Rep. 897), it is said: "Of course such fact or facts must be material,—pertinent to the matter in controversy,—and the interrogatories must ask a response as to the existence of some particular fact, and not embrace a series of facts which are necessarily included in, and determined by, the general verdict." See, also, *Hawley v. Railway Co.*, 71 Iowa, 717 (29 N. W. Rep. 787), and *Thomas v. Schee*, 80 Iowa, 238 (45 N. W. Rep. 539). Except the fourth, each and all of these interrogatories embraced facts which, under the issues, were necessarily included in and determined by the general verdict. The fourth was immaterial, for, as already stated, recovery was sought not upon a claim that proofs had been made, but that making them had been waived. There was no error in refusing to submit these interrogatories.

V. Appellant asked an instruction, which was refused, reciting the other insurance, and the amount thereof, claimed to be upon the stock of goods, and directing the jury, if it found the defendant liable, to ascertain what it would cost to have replaced the goods, and to prorate the amount among the companies according to the amount covered by each policy, and "then you will rate three-fourths of the amount found to be the *pro rata* share of this defendant, with interest." While the policy on the goods does provide for prorating the loss, we do not think there was any issue to call for the instruction refused. Appellant, in the eighth paragraph of the answer to the first count of the petition, alleged that there was five hundred dollars existing insurance on the goods at the time this policy was issued, and that this policy was therefore void. Plaintiffs replied, and proved, without contradiction, that appellant's agent knew of said other insurance when he took the application for this. In the next paragraph of said answer appellant recites the provisions of the

policy as to prorating with other insurance, and
says as follows: "That if it shall be found that
this policy provides, and the other policies thereon
are valid, that they shall prorate with this defend-
ant, but that in no event can the liability of this com-
pany be more than three-fourths of the actual value
of the property." Surely neither of these paragraphs
alleges the existence of other insurance as a basis
for prorating the loss. The first alleges other insur-
ance, not as a basis for prorating; but as rendering
the policy void. The second does not allege other
insurance, but asks to prorate if any be found. To
entitle appellant to this instruction, facts should
have been alleged that entitled it to have the loss
prorated. Another instruction asked by appellant
and refused, is as to whether appellees had a right to,
and did, rely upon what Swire did. This subject was
fully covered by instructions given. The same is true
of the tenth instruction, refused, and the eleventh is
disposed of, in what we have said as to the evidence of
Swire's authority being in writing. In this connec-
tion, we quote from *Taylor v. Insurance Co., supra,* the
following: "The question of chief importance in this
case is, what were the powers and duties of the agent,
Bowen? It appears, that he had an agreement in
writing with the defendant, which was not, however,
introduced in evidence; hence his authority and duty
to act for the defendant must be determined from
what he says in regard to it, and the policy in suit."
The refusal to give the fifteenth and sixteenth instruc-
tions asked, is complained of. These instructions state
elementary propositions that are sufficiently indicated
in those given. We discover no error in refusing said
instructions.

VI. Appellant complains of the seventh para-
graph of the charge, because the court said, "there
were no proofs of loss." Such was the fact under

these issues, for, as already stated, it was immaterial, under the issues, that appellees attempted to make proofs of loss after the period fixed.  It is also complained, that in this the court refers to other paragraphs of the charge.  Surely there was no error in this.  If, in each succeeding paragraph, the court must repeat all that has preceded, the charge would be endless and confusing.  What we have said disposes of all the questions argued, and leads us to the conclusion that the judgment of the district court should be AFFIRMED.